***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Holmes.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. Plaintiff was an employee of Allegheny Technologics/Allvac.
3. The carrier for defendant-employer is Specialty Risk Services.
4. Plaintiff's average weekly wage and compensation rate will be determined by the Commission from the Form 22, as long as it is determined that the Form 22 is accurate.
5. Plaintiff contends and defendants deny that plaintiff has sustained an occupational disease to his neck and back.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff, who was 40 years old at the time of hearing before the Deputy Commissioner, alleges to have injured his neck and back on May 16, 2002, while performing his job duties.
2. Plaintiff's job was a shot blast operator for defendant-employer, a specialty steel manufacturer that manufactures steel material for jet engines and for the biomedical field.
3. Plaintiff's job duties included shot blasting steel material. He would line up orders for material handlers, and the crane operator would load the material into a shot blast roll table, then plaintiff would proceed to the shot blast roll table and inspect the material. During the inspection process, plaintiff would have to often fix defects with a hand grinder which weighed 20 pounds. Some steel material was in a rectangle shape that necessitated a shot blast operator to flip the material in order to inspect all sides of the material. A shot blast operator would flip the material with a bar or summon a crane operator to flip the material. Then, plaintiff would sweep the shot beneath the machine as part of the clean-up process.
4. The Form 22 shows plaintiff's average weekly wage to be $642.88, yielding a compensation rate of $428.59.
5. Plaintiff testified that, during the latter part of April 2002, he was turning a bar at work when he felt a pop in his back. He testified that this back-popping experience made his neck hurt three weeks later.
6. Plaintiff did not report this alleged incident to Michael Bethea, his direct supervisor, to Bobby Pegram, his shift supervisor, to Janet Godwin, benefits administrator, or to Danny Caudle, supervisor of all shifts.
7. Plaintiff first reported to a medical provider, Union Family Practice, on May 16, 2002, with complaints of a three-week history of neck pain. Plaintiff stated that there was no history of trauma.
8. The Full Commission gives little weight to the testimony of plaintiff regarding the nature of his injury, given that he failed to report the incident to any of his supervisors and failed to relate the incident to a medical provider when initially seeking treatment.
9. Plaintiff requested to be taken out of work under FMLA beginning on August 23, 2002. Plaintiff reported lower back pain to Dr. Sweeney on September 3, 2002. X-Rays of the lumbar spine revealed mild degenerative joint disease. Plaintiff was told to continue neck physical therapy and prescribed Mobic.
10. Dr. Sweeney recommended that an MRI of the neck and back be taken along with a neurosurgical referral. On September 12, 2002, the lumbar MRI revealed disc bulging at L4-5 L5-S1 with an unremarkable cervical MRI.
11. On February 6, 2003, Dr. Lawrence Raymond performed an independent medical examination on plaintiff and went to plaintiff's work site to view the suitability of his job duties. Dr. Raymond stated that plaintiff would most likely be unable to return to his former position due to the lifting requirements.
12. Plaintiff's last date of official employment was March 6, 2003. Plaintiff had done roofing work for 28 years prior to his employment with defendant-employer. Plaintiff also told one of his supervisors that he did roofing work on the side.
13. Plaintiff was examined by Dr. Eric Nabors on September 2, 2003. Plaintiff told Dr. Nabors that he could not recall a specific accident or incident when the pain began, but that he first noticed the pain in August 2002. Based on the physical examination of plaintiff, his history, and the September 12, 2002, MRI results, Dr. Nabors diagnosed plaintiff with degenerative disk disease at L4-5 and L5-S1 with increased back pain following a functional capacity evaluation. Dr. Nabors then viewed a videotape of plaintiff's job duties along with correspondence from plaintiff's counsel before his deposition. Dr. Nabors testified that plaintiff's job duties did not place him at an increased risk for contracting an occupational disease to the back.
14. On October 30, 2003, plaintiff was examined by Dr. Robert Humble, an orthopedic specialist. Plaintiff had been put on disability by his family physician, and Dr. Humble diagnosed plaintiff with chronic back pain. Dr. Humble recommended that plaintiff remain on his arthritis medicine, Arthotec, and a muscle relaxer, Flexeril. Dr. Humble continued plaintiff on his disability. On March 4, 2004, during a disability check-up appointment, Dr. Humble found plaintiff to be having more back pain, shoulder pain, and neck pain along with headaches. Due to the headaches, Dr. Humble referred plaintiff to a neurologist.
15. On March 8, 2004, Dr. Alfred Rhyne, a board certified orthopedist with a specialty in the spine, was provided with plaintiff's medical records and a videotape of plaintiff's job duties. Dr. Rhyne was asked to give an opinion as to whether plaintiff's job duties placed him at an increased risk of developing an occupational disease to the neck or back when compared to the general public. Dr. Rhyne opined that plaintiff had not contracted an occupational disease.
16. Dr. Humble gave plaintiff a nine percent (9%) impairment rating to his lower lumbar region.
17. Plaintiff received both short-term and long-term benefits from defendant-employer.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff did not prove by the greater weight of the evidence that he sustained a compensable injury by accident arising out of and in the course of his employment. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff did not prove by the greater weight of the evidence that he contracted a compensable occupational disease as a result of his job duties with defendant-employer. N.C. Gen. Stat. § 97-53(13).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim is hereby DENIED.
2. Defendants shall pay the costs, including an expert witness fee in the amount of $400.00 to Dr. Scott A. Sweeny, if not paid by prior order.
This 21st day of June 2005.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER